UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Zahra Shahrashoob, PLAINTIFF | § § § § |
| V. | § § |
| Texas A&M University System, Texas A&M at College Station, Chancellor John Sharp, Texas A&M Board of Regents, Katherine Banks-President, Dr. Arul Jayaraman, Dr. N.K. Anand, Damon Slaydon, Jennifer Smith, Dr. Blanca Lupiani, Dr. Micah Green, Dr. Victor Ugaz, Dr. Jodie Luthkenhaus, Dr. Anastasia Muliana, Jaime Andres, Gary Blizzard, Kevin McGinnis DEFENDANTS | § § § § § § § § § § § Civil Action: 4:22-cv-699  *Jury Trial Requested* |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

**TO THE HONORABLE JUDGE LEE ROSENTHAL:**

**COMES NOW, Plaintiff Zahra Shahrashoob** (herein referred to as "Shahrashoob" or "Plaintiff") in the above-styled and numbered cause of action and files Plaintiff's Response to Defendant's Motion to Dismiss to respectfully show this Court the following:

Plaintiff's Title VII claims should be maintained as Plaintiff has pleaded the necessary factual allegations required by law to elicit a remedy. More specifically, Plaintiff has pleaded that she has suffered adverse employment actions that similarly situated employees differing from Plaintiff's gender and/or nationality did not experience.

With respect to the Title VII claim, Plaintiff concedes that all individual defendants and the Texas A&M Board of Regents are not employers under Title VII and therefore, are not subject Plaintiff's Title VII claim. However, Plaintiff asserts that she is an employee of both the Texas

A&M University System and Texas A&M University at College Station, as Texas A&M University at College Station is a part of the Texas A&M University System.

With respect to the 14th amendment/Section 1983 claims, Plaintiff asserts that these claims should be maintained against all individuals with the exception of John Sharp, Katherine Banks, and Gary Blizzard. These individuals, in their official and individual capacities, committed acts that violated established rights with respect to qualified immunity being waived and intentionally violated Plaintiff's rights with respect to Plaintiff's 14th amendment equal protection rights.

As these claims relate to Texas A&M University at College Station and Texas A&M University System, both of these entities have consented to suit in federal court by implication.

With respect to Plaintiff's retaliation claim, Plaintiff pleads that she made discrimination complaints. She pleads that after the discrimination complaints, her contract was not renewed and she was terminated before the renewal period. She pleads that she was denied reasonable accommodations after making complaints of discrimination. Additionally, she pleads that she did not receive the raise in compensation she was to receive from an offer she accepted from Defendants. She did not receive this raise in compensation after she made complaints of discrimination.

With respect to Plaintiff's ADA claims as to all Defendants, Plaintiff has pleaded sufficient facts to maintain a cause of action under the ADA as to all defendants.

### A. ARGUMENTS AND AUTHORITY

**I.     Plaintiff has pleaded sufficient facts to support a claim for relief, specifically, as it relates to suffering an adverse employment reaction that similarly situated employees who are not members of Plaintiff's protected classes, did not experience.**

While there is a prima facie case that needs to be established in employment discrimination cases as explained in *McDonnell Douglas Corp. v.Green*, 411 U.S. 792, 802 (1973), a Plaintiff is not required to make a showing of the prima facie case at the pleading stage. *Raj v.Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Instead, only a short and plain statement of the claim showing that the pleader is entitled to relief need be made. *Swierkiewicz v. Sorema NA*, 534 US 506, 512 (2002).

In this case, Plaintiff has satisfied that requirement. Plaintiff has pleaded adverse employment actions and she has pleaded other employees who were not Iranian women, were similarly situated and did not experience these actions, as she was the only one who experienced them. Not only has she pleaded that she was qualified and that she is a member of a protected class, but in ¶ 33 of Plaintiff's First Amended Complaint, she has pleaded that a white male, a person who is outside of either of Plaintiff's protected classes, received substantially more compensation than Plaintiff did. The pleading illustrates that he was similarly qualified and hired by the same department that hired Plaintiff.

In ¶'s 34, 37, and 72 of the First Amended Complaint, Plaintiff has pleaded that she was given more courses to teach, without receiving extra compensation for teaching those extra courses, as what was given to other similarly situated faculty, outside of Plaintiff's protected classes, who taught extra courses.

In ¶ 38, Plaintiff has pleaded that she was refused start up research funds (a form of compensation and significant aid in performing sufficient research required to get a promotion or tenure, these things can be inferred of faculty employment at a research university) whereas, all other faculty outside of her protected class membership received these start up research funds.

While the refusal to obtain a work visa for Plaintiff is explained in multiple paragraphs of the First Amended Complaint, ¶'s 41 and 42 show that Plaintiff has pleaded that although work visas were obtained/given by Defendants to all Non US Faculty, these efforts and benefits were not given to Plaintiff. Without a work visa, a non US citizen's ability to maintain employment is significantly impaired.

## II.     Texas A&M University and the Texas A&M University System have consented to being sued in federal court and as a result, are not protected by sovereign immunity.

While without expressed intent on the part of Congress or a waiver of immunity by the state, states are immune from being sued in federal court, as explained by the 11th Amendment. However, a state can waive immunity through implication, overwhelming implication. *Murray v. Wilson Distilling Co.*, 213 US 151, 171 (1909).

In this case, the state Defendants have waived their immunity and have consented to being sued in Federal Court by their overwhelming receipt of federal funds, in part, to promote diversity and inclusion at Texas A&M University by retaining a diverse faculty. Not only are the state defendants receiving hundreds of millions of dollars in federal funding, as pleaded in the First Amended Complaint, but much of this funding is to achieve ethnic, gender, and other forms of diversity, of its faculty. ¶ 24, First Amended Complaint. Much of the money they receive is in the area of the objective they have been thwarting. By receiving so much money, in part, in the area of retaining diverse faculty, Defendants have consented to federal court jurisdiction for the purposes of this suit. As a result, Section 1981 and the 14th amendment claims should be maintained against these entities.

## III.    Plaintiff has pleaded sufficiently, the requirements to maintain a retaliation claim against Defendants.

Defendants fallaciously make references to ¶'s 49 and 57 of Plaintiff's First Amended Complaint, as if those paragraphs exclusively articulate a retaliation claim relative to the rest of the Complaint. While these paragraphs address retaliation, they do not do it exclusively of any other paragraphs. ¶ 52 alleges that Plaintiff did not receive a raise as part of an offer she accepted from Defendants after Plaintiff made multiple complaints of discrimination. ¶'s 52 and 53, allege that Plaintiff was denied reasonable accommodations after Plaintiff made multiple complaints of discrimination. Plaintiff made complaints of discrimination throughout the duration of these discrimination complaint references in the First Amended Complaint.

**IV.     Defendants can be held liable for Plaintiff's ADA claims.**

42 U.S. Code § 12202 expresses the congressional intent necessary to set aside sovereign immunity for states that are in violation of this chapter. Arguments made by Defendants asserting that Congress did not have the authority to set aside immunity in this case, do not specifically address the ADA.

**V.     Plaintiff's Title VI claim against Defendants should be maintained, as Plaintiff has pleaded sufficient facts to show intentional discrimination on the basis of nationality.**

Plaintiff has pleaded sufficient facts to illustrate intentional discrimination on the basis of nationality towards Plaintiff. Defendants did not avail Plaintiff the benefit or aid of obtaining a work visa as what is done with every other non US faculty member in her department, as pleaded in Plaintiff's First Amended Complaint. Plaintiff makes reference to the refusal of Defendants to obtain a work visa for Plaintiff numerous times. Plaintiff discusses the work visa issue perpetually with Defendants. From these discussions, including Plaintiff's request for a work visa to facilitate her returning home to Iran to see her dying parents, Defendants were well aware of her nationality and still refused to confer those benefits of the work visa obtainment procedure

to Plaintiff. Due to the numerous times Plaintiff requested assistance from Defendants to acquire a work visa, and due to the numerous refusals Defendants exercised relating to obtaining a work visa for Plaintiff, one can reasonably infer these refusals were intentional and conformed to the behavior that Title VI prohibits, given that Defendants diligently obtained work visas for all other foreign born faculty.

## VI. Plaintiff's 14th amendment equal protection claims against the named individuals in their individual and official capacities should be maintained.

Defendants erroneously argue that any rational basis behind employment decisions should be excused under equal protection law. However, the cases they cite *Integrity Collision Center v. Fulshear*, 837 F.3d 581 (5th Cir. 2016) and *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008), are distinguishable from the equal protection issues in this case. Those cases relate to the "class of one" equal protection theory. Those cases did not involve members of protected classes. Rational basis review has no relevance to equal protection issues involving protected classes, as is noted in those cases.

A plaintiff must show, in order to waive qualified immunity for individuals who act on behalf of a state, (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v.Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). To state a claim of discrimination under the Equal Protection Clause and § 1983, a plaintiff must plausibly allege two things. First, he must allege that he was treated differently than persons similarly situated to him; second, he must allege that such treatment stemmed from discriminatory intent. Anokwuru v. City of Houston, 990 F.3d 956, 965 (5th Cir. 2021).

Dr. Arul Jayaraman is not protected by qualified immunity in this case. He violated Plaintiff's rights by denying her equal protection rights when he did not attempt to obtain a work visa for Plaintiff as he had done for other similarly situated employees who were not Iranian women in that department. As alleged in the First Amended Complaint, he continued to extend promises to perform the work needed to obtain a work visa for Plaintiff, but never did. Due to the volume of requests made by Plaintiff, Jayaraman's conduct could be described as intentional. However, Jayaraman helped to obtain work visas for other non US faculty, who were not Iranian women in the same department as Plaintiff. Jayaraman saddled Plaintiff with more work obligations by giving her more classes to teach but never increased her salary. Yet, he increased the pay of other faculty who he had given more classes to teach. These faculty members who had their pay increased for teaching more classes were not Iranian women. Jayaraman never gave Plaintiff any startup funds for her research. Yet he had given other faculty startup funds who were not members of the same protected classes of which Plaintiff was a member. In ¶ 40, Jayaraman hints at his intentional conduct by expressing that Plaintiff "is not a priority" and that is one of the reasons why no effort was being made on her behalf as was made on the behalf of other similarly situated faculty who were not Iranian women. Given that the only distinguishing factor between the other faculty and Plaintiff was that the other faculty were not Iranian women, perhaps that is why Jayaraman felt that Plaintiff was not a priority.

Blanca Lupiani is not protected by qualified immunity because she violated Plaintiff rights by frustrating and denying Plaintiff's requests for reasonable accommodations as pleaded in Plaintiff's First Amended Complaint.

Given the totality of the occurrences that transpired throughout Plaintiff's employment with Defendants, all named individuals mentioned in the Facts of the First Amended Complaint

violated Plaintiff's 14th amendment equal protection rights, waiving their qualified immunity in the process.

**VII.   Plaintiff concedes that Katherine Banks, John Sharp, Gary Blizzard, and the Texas A&M Board of Regents should be dismissed from this action.**

Plaintiff concedes that the above named Defendants should be dismissed.

### B. Prayer

For these reasons, Plaintiff requests that this court deny Defendants Motion to Dismiss except in the areas where Plaintiff expressly concedes to Defendants' argument.

Respectfully submitted,

The Bozeman Law Firm

/s/ Marc Anson Bozeman
Attorney-In-Charge
Texas State Bar No. 24057044
Federal Bar No. 1533462
5499 Braesvalley Dr., No. 462
Houston, Texas 77096
Telephone: (832) 741-7950
mb@bozemanlitigation.com

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was sent to counsel named below by way of the CM/ECF electronic filing system on the 15th day of August, 2022, addressed as follows:

**Via CM/ECF Federal Court Filing System**

YVONNE D. BENNETT
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Yvonne.Bennett@oag.texas.gov

/s/ Marc Anson Bozeman
Marc Anson Bozeman