United States District Court
Southern District of Texas
**ENTERED**
August 26, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ZAHRA SHAHRASHOOB, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-22-699 |
| | § | |
| TEXAS A&M UNIVERSITY SYSTEM, ET. AL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Zahra Shahrashoob, a former employee of Texas A&M at College Station, sued her former employer and colleagues for violations of Titles VI and VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Americans with Disabilities Act of 1990, and 42 U.S.C. §§ 1981 and 1983. Shahrashoob sued the Texas A&M University System, Texas A&M at College Station, the chancellor and president of Texas A&M, the Texas A&M Board of Regents, and twelve employees. In response to the motion to dismiss, Shahrashoob voluntarily dismissed, without prejudice, her claims against Katherine Banks, John Sharp, Gary Blizzard, and the Texas A&M Board of Regents. Her claims against the Texas A&M University System, Texas A&M at College Station, and eleven Texas A&M employees ("the Individual Defendants") remain.

Based on the pleadings, motions, and the applicable law, the court grants the motion to dismiss. Shahrashoob's Title VI and Title VII claims against the Individual Defendants; her 42 U.S.C. §§ 1983 and 1981 claims against Texas A&M University System, Texas A&M at College Station, and the Individual Defendants in their official capacities; and her ADA and Title IX claims against all Defendants, are dismissed, with prejudice and without leave to amend because amendment would be futile. Shahrashoob's Title VII and Title VI claims against the University

and University System; and 42 U.S.C. §§ 1983 and 1981 claims against the Individual Defendants in their individual capacities, are dismissed, without prejudice and with leave to amend. Shahrashoob's second amended complaint is due by **September 22, 2022.** The initial conference is reset to **November 18, 2022, at 11:30 A.M.**, by Zoom, to allow time for the Defendants to answer or move to dismiss Shahrashoob's second amended complaint.

The reasons for these rulings are set out below.

I. **Background**

Shahrashoob is an Iranian woman. (Docket Entry No. 10, at 5). She was hired as a lecturer in the Department of Chemical Engineering at Texas A&M starting in September 2018. She was the only Iranian faculty member in her department. (*Id.*). She alleges that she was paid a lower salary than "other faculty of a different gender and nationality from her own." (*Id.*). She alleges that a white male faculty member with the same credentials as her was hired by the department after her, but received $10,000 more than she did. (*Id.*).

In addition to the different salary, Shahrashoob alleges that: she was the only Ph.D. faculty member who was not given an office, but was instead required to share a cubicle with non-Ph.D. faculty; she was required to teach more courses than other faculty members, but without additional compensation; she was the only faculty member denied a "start-up fund" to aid with research; she was the only faculty member required to teach summer classes, without any additional pay; and she was the only non-U.S. citizen faculty member in the department who was told that she would have to secure her own work visa, instead of the school securing it for her. Shahrashoob also alleges that Texas A&M offered her a three-year term of employment in 2019, but then "illegally replaced that three year contract tenure of employment with a one year tenure of employment in 2020." (*Id.*, at 6). She alleges that when she asked Arul Jayaramam, the Chemical Engineering

department head, about why the school could not secure her work visa for her, she was told that "she was not a priority." (*Id.*, at 6). She also alleges that Jayaramam, when extending the new offer to her, "informed Ms. Shahrashoob that before accepting the new offer, she should get permission to do so from her husband." (*Id.*, at 8).

The complaint alleges that around the spring of 2020, Shahrashoob "made complaints of discrimination" to several people at Texas A&M, including Jaime Andres, Damon Slaydon, and Anastasia Muliana. The complaint states that Andres was an "administrator," but the complaint does not specify Slaydon's or Muliana's positions at Texas A&M. After Shahrashoob made complaints to these individuals, she alleges that she was retaliated against. She alleges that: Jodie Luthkenhouse, a faculty member, humiliated her "by not inviting [her] to staff meetings of faculty in the Chemical Engineering Department, meetings she had been invited to before making her complaint"; the "defendants" denied her requests to work remotely during COVID, even though they allowed other similarly situated faculty to work from home; she was the only Ph.D. faculty member required to teach labs after she made complaints of discrimination; and she was fired in January 2021 even though her contract was not set to end until May 2021.

Shahrashoob alleges that she was treated differently than her peers because of her nationality and her gender, and that she was retaliated against when she complained about discriminatory treatment. She alleges that she has suffered "emotional distress, lost wages, and

3

career advancement." (*Id.*, at 12). She seeks "actual and consequential damages, plus interest" and "attorney's fees and costs of court." (*Id.*, at 22).

## II. The Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) governs challenges to a federal court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

4

A court may deny leave to amend for futility if an amended complaint would fail to state a claim upon which relief could be granted. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012). The district court has discretion to grant or deny leave to amend. *Id.*

**III. Analysis**

Shahrashoob asserts claims under Title VI and Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Americans with Disabilities Act of 1990, and 42 U.S.C. §§ 1981 and 1983. She asserts these claims against every defendant.

Shahrashoob "concedes that Katherine Banks, John Sharp, Gary Blizzard, and the Texas A&M Board of Regents should be dismissed from this action." (Docket Entry No. 16, at 8). The claims against those defendants are dismissed, without prejudice.

Title VI, Title VII, Title IX, and the Americans with Disabilities Act do not provide for claims against individuals. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) (Title VII); *Estrada v. Nehls*, 524 F. Supp. 3d 578, 597 (S.D. Tex. 2021) (citing *Lollar v. Baker*, 196 F.3d 603, 608–09 (5th Cir. 1999)) (ADA); *Muthukumar v. Kiel*, 478 F. App'x 156, 159 (5th Cir. 2012) (Title VI); *Owens v. Pearl River Cmty. Coll.*, Case No. 2:21-CV-140, 2022 WL 1434651, at *11 (S.D. Miss. May 5, 2022). These claims against the Individual Defendants are dismissed, with prejudice and without leave to amend, because amendment would be futile.

Shahrashoob cannot assert 42 U.S.C. §§ 1983 and 1981 claims against the Texas A&M University System, Texas A&M at College Station, or the Individual Defendants in their official capacities, because those claims are barred by the Eleventh Amendment. *See Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613, 625 (S.D. Tex. 2014) ("Congress . . . has not abrogated sovereign immunity with respect to claims under § 1981."); *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

5

"Pursuant to the Eleventh Amendment, a state's sovereign immunity in federal court extends to private suits against state agencies, state departments, and other arms of the state." *Daniel v. Univ. of Tex. S.w. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020). "A public university system is considered a state agency," and "public universities are [also] entitled to sovereign immunity as arms of the state." *Id.* at 257. "There is a narrow exception to Eleventh Amendment immunity for suits brought against individuals in their official capacity, as agents of the state or a state entity, if the relief sought is injunctive in nature and prospective in effect." *Manley v. Tex. Southern Univ.*, 107 F. Supp. 3d 712, 719 (S.D. Tex. 2015). Shahrashoob seeks damages, not injunctive relief.

Shahrashoob argues that the University and the University System waived their immunity and consented to being sued in federal court "by their overwhelming receipt of federal funds, in part, to promote diversity and inclusion at Texas A&M University by retaining a diverse faculty." (Docket Entry No. 16, at 4). But the receipt of federal funds can waive immunity only if those funds were conditioned on the waiver of sovereign immunity. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011). There is no plausible allegation that the University or the University System accepted federal funds expressly conditioned on the waiver of sovereign immunity. Shahrashoob's § 1983 and § 1981 claims against the University, University System, and the Individual Defendants in their official capacity are dismissed, with prejudice and without leave to amend.

Shahrashoob's ADA claim against the University and the University System is also dismissed because of Eleventh Amendment immunity. Shahrashoob requests monetary damages under Title I of the ADA, alleging that the University failed to make reasonable accommodations for her disability—asthma—by denying her the right to work from home during COVID. "Congress did not abrogate the states' sovereign immunity in enacting Title I of the ADA." *Perez*

*v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing *Board of Trustees v. Garrett*, 531 U.S. 356, 365–74 (2001)). Nor has Texas waived its Eleventh Amendment immunity. And even if Shahrashoob could assert a Title I ADA claim against the State, she has not alleged that she was denied an accommodation to teach remotely because of her disability. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). She alleges, instead, that she was denied this accommodation because she made complaints of gender and national origin discrimination. Shahrashoob's ADA claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

That leaves the following claims against the following defendants to still be addressed:

- Title VII race discrimination and retaliation claims against Texas A&M University System and Texas A&M at College Station;

- Title IX employment discrimination claim against Texas A&M University System and Texas A&M at College Station;

- Title VI discrimination claim against Texas A&M University System and Texas A&M at College Station;

- 42 U.S.C. § 1983 and 42 U.S.C. § 1981 claims against the Individual Defendants in their individual capacities.

These remaining claims are addressed below.

### A. Title VII

Shahrashoob asserts Title VII claims for race discrimination and retaliation against all seventeen defendants for discrimination and retaliation. Her Title VII claims are based on gender and national origin.

Shahrashoob can assert a Title VII claim only against her employer. An "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees …" 42 U.S.C. § 2000e(b). Title VII does not provide a cause of action against the Individual Defendants.

7

*See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003). Shahrashoob's Title VII claims against the Individual Defendants are dismissed, with prejudice and without leave to amend.

The Defendants argue that only Texas A&M, and not the Texas A&M University System was Shahrashoob's employer. Shahrashoob "asserts that she is an employee of both the Texas A&M University System and Texas A&M University at College Station," because "Texas A&M University at College Station is a part of the Texas A&M University System." (Docket Entry No. 16, at 1–2). Texas A&M University System is not Shahrashoob's employer simply because Texas A&M University is part of the System. Instead, Shahrashoob must allege facts that would show that "the Texas A&M University System exercised control over [her] employment." *Ridha v. Texas A&M Univ. Sys.*, Case No. 4:08-CV-2814, 2009 WL 1406355, at *4 (S.D. Tex. May 15, 2009). Because she has not done so, her Title VII claims against the University System is also dismissed, without prejudice and with leave to amend. This leaves only her Title VII claims against Texas A&M at College Station.

      **i.    Race Discrimination**

To assert a Title VII race-discrimination claim against Texas A&M, Shahrashoob must plausibly allege that: she is within a protected class of people; she was qualified for the position; she suffered an adverse employment action; and there were similarly situated persons outside her protected class who were treated more favorably. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). "Adverse employment actions include only *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, or compensating." *Hamilton v. Dallas Cnty.*, --- F.4th ---, 2022 WL 3050078, at *4 (5th Cir. Aug. 3, 2022) (emphasis in original) (quoting *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019)).

Shahrashoob argues that she has "pleaded that a white male . . . received substantially more compensation than [she] did"; that "she was given more courses to teach, without receiving extra compensation for teaching those extra courses, as what was given to other similarly situated faculty"; that "she was refused start up research funds"; and that she was denied assistance in obtaining a work visa. (Docket Entry No. 16, at 4–5).

Shahrashoob's claims that she was denied assistance in obtaining a work visa, denied start-up funds, and given more courses to teach, are not adverse employment actions. *See Hamilton*, 2022 WL 3050078, at \*4; *Collins-Pearcy v. Mediterranean Shipping CO. (USA) Inc.*, 698 F. Supp. 2d 730, 760 (S.D. Tex. 2010) (an employer's decision to not sponsor an employee for a work visa is not an ultimate employment decision). Some of Shahrashoob's allegations are related to compensation, but they do not support a claim of disparate treatment. Shahrashoob alleges that she was paid approximately $63,000 when she started in September 2018. Only after she was hired did Texas A&M hire a white male faculty member with the same credentials, and paid him approximately $10,000 more. At the time she was hired, Texas A&M did not make a discriminatory decision to pay her less than a male colleague. Shahrashoob alleges that in January 2020 her salary was increased to mirror the male associate's salary. (Docket Entry No. 10, at 8). Shahrashoob alleges that she was extended a new offer in February 2020 that contained a raise to $98,000, but that she was "denied this raise." Shahrashoob does not allege, however, that other employees of a different nationality and gender, in her position and with her experience in the Chemistry Department, received a raise when she did not.

It is unclear whether the decision to not pay Shahrashoob for teaching extra courses is an "ultimate employment decision," and it is unclear who made the decision. But even if the lack of compensation for teaching extra courses was an ultimate employment decision, Shahrashoob's

9

allegations fail to identify any similarly situated individuals. "'Similarly situated' employees are employees who are treated more favorably in 'nearly identical' circumstances." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 856 (S.D. Tex. 2010) (citation omission). For example, "[w]here different decision makers or supervisors are involved, their decisions are rarely 'similarly situated' in relevant ways for establishing a *prima facie* case." *Id.* at 857. Shahrashoob alleges that, for example, "[i]n the fall of 2019, Mr. Jayaraman gave [her] more courses to teach and new research obligations to fulfill. However, [her] salary remained the same even though other similarly situated non-tenured faculty charged with similar responsibilities received salaries exceeding $100,000." (Docket Entry No. 10, at 6). Shahrashoob has not alleged facts showing that these individuals were of a different gender or national origin, were hired in the same position, or had the same supervisor. More description is needed.

Shahrashoob's Title VII discrimination claim is dismissed, without prejudice and with leave to amend. It is unclear from Shahrashoob's current complaint which decisions were ultimate employment decisions, who at Texas A&M was making the allegedly adverse employment decisions (the Board? The University? Her supervisor? Another employee?), and whether there were any similarly situated individuals (in the same department, with the same supervisor, in the same role, with the same or similar credentials, and of different gender and national origin) who received more favorable treatment. An amended complaint must clarify these allegations.

        **ii.    Retaliation**

Title VII prohibits retaliation against individuals who have opposed discriminatory employment practices or made charges of discrimination. 42 U.S.C. § 2000e-3(a). To state a prima facie claim for retaliation under Title VII, a plaintiff must allege that "(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer,

10

and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). "[A]n adverse employment action for a retaliation claim is any action that a 'reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Memon v. Deloitte Consulting, LLP*, 779 F. Supp. 2d 619, 634 (S.D. Tex. 2011) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 69 (2006)). "At the prima facie case [stage], a plaintiff can meet [her] burden of causation simply by showing close enough timing between [her] protected activity and [her] adverse employment action." *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

Shahrashoob alleges that she filed an EEOC complaint (at an unspecified date), and that she complained of discrimination directly to Jaime Andres, Damon Slaydon, and Anastasia Muliana. The nature of her complaints and when those complaints were made is unclear. It is unclear from the complaint if Shahrashoob ever made a formal complaint to the University about discriminatory treatment. The roles Andres, Slaydon, and Muliana had at the University are unspecified.

Shahrashoob alleges that sometime after she complained of discriminatory treatment:

- Arul Jayaraman and N.K. Anand "plotted and retaliated against her by initially evaluating her poorly on the employee annual evaluation in May 2019," (Docket Entry No. 10, at 7);

- Jodie Luthkenhouse "retaliated against [her] by not inviting [her] to staff meetings of faculty in the Chemical Engineer Department," (*id.* at 9);

- "Defendants"—without specifying which defendants—"prevented" her from working from home during COVID, (*id.*, at 9);

- Micah Green "refused to invite [her] to faculty meetings and include her on faculty correspondence," (*id.*, at 10);

11

- Victor Ugaz "refused to assign [Shahrashoob] any online classes," (*id.*); and

- "Texas A&M University and Defendants terminated her in January of 2021."

Shahrashoob alleges, implausibly, that all seventeen defendants "terminated her in January of 2021." It is unclear from the complaint which individuals, if any, had the authority to end her employment, and which individuals had knowledge of her complaints about discrimination. Shahrashoob has not alleged that the University or any of the Individual Defendants had knowledge of her EEOC complaint or the complaints about discrimination she made to Andres, Slaydon, and Muliana. The individuals who she alleges she complained to about discriminatory treatment are different from the individuals who she alleges retaliated against her. And because Shahrashoob did not allege when she made her complaints as compared to when she was excluded from faculty meetings and fired, she has not pleaded a plausible causal connection between the two.

Further allegations are needed to clarify the causal connection between her complaints and the adverse employment actions, to plausibly state a Title VII retaliation claim. Shahrashoob's Title VII retaliation claim is dismissed, without prejudice and with leave to amend.

**B.     Title IX**

Title IX states that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Shahrashoob's Title IX claim fails, however, because "Congress intended Title VII to exclude a damage remedy under Title IX for individuals alleging employment discrimination." *Lakoski v. James*, 66 F.3d 751, 755 (5th Cir. 1995); *see id.* at 758 ("[I]ndividuals seeking money damages for employment discrimination on the basis of sex in federally funded educational institutions may not assert Title IX either directly

12

or derivatively through § 1983."). "The anti-retaliation provisions of [T]itle VII likewise provide the exclusive remedy for retaliation against employees of such federally funded educational institutions who raise allegations of employment discrimination." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247–48 (5th Cir. 1997); *id.* at 248 ("[T]itle IX affords no private right of action to the employees of federally funded educational institutions who suffer retaliation as a consequence of allegations of employment discrimination."). Shahrashoob's Title IX claim is dismissed, with prejudice and without leave to amend.

### C. Title VI

Title VI of the Civil Rights Act of 1964 states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "[O]nly public and private entities can be held liable under Title VI." *Price ex rel. Price v. La. Dep't of Ed.*, 329 F. App'x 559, 561 (5th Cir. 2009) (per curiam). To state a claim for Title VI discrimination, a plaintiff must, among other things, "plead facts in support of intentional discrimination." *Id.* at 561. For the same reasons that Shahrashoob has not clearly alleged treatment different from similarly situated employees for her Title VII claim, Shahrashoob must amend her complaint to make those allegations clear for her Title VI claim to survive.

Entities such as Texas A&M at College Station, moreover, cannot be held vicariously liable under Title VI. *See Wren v. Midwestern State Univ.*, Case No. 7:18-cv-00060, 2019 WL 501920, at *7 (N.D. Tex. Jan. 23, 2019); *Vouchides v. Houston Cmty. Coll. Sys.*, Case No. H-10-2559, 2011 WL 4592057, at *6 (S.D. Tex. Sept. 30, 2011); *Landry v. Cypress Fairbanks ISD*, Case No. 4:17-CV-3004, 2018 WL 3436971, at *6 (S.D. Tex. July 17, 2018). "[W]hen a Title VI claim does not

involve an official policy of intentional discrimination, a plaintiff must allege an 'appropriate person—an official authorized to institute corrective measures—had actual knowledge of the discrimination and responded with indifference.'" *Wren*, 2019 WL 501920, at *7 (citation omitted). Shahrashoob's complaint alleges that, for example, she "was the only PhD faculty that was not given an office." The complaint does not specify who made the decision to not give her an office—was this a university policy or decision? Or a decision made by an employee, and if so, which employee? Other parts of Shahrashoob's complaint assert allegations of discrimination by individual employees. The complaint is unclear whether any of individuals were "official[s] authorized to institute corrective measures." Absent clear allegations of an official policy of intentional discrimination, or that an appropriate person had actual knowledge of discrimination and responded with indifference, Shahrashoob's Title VI claim must be dismissed, without prejudice and with leave to amend.

    **D.    42 U.S.C. § 1983**

Shahrashoob did not allege in her complaint whether she was suing the Individual Defendants in their individual or official capacities. In her response to the motion to dismiss, however, she states that she has sued the Individual Defendants in both capacities. (*See* Docket Entry No. 16, at 6). Since her claims against the Individual Defendants in their official capacities have already been dismissed, the court now addresses the claims against the Individual Defendants in their individual capacities.

Under § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured…

Shahrashoob asserts, in a header in her complaint, that her § 1983 claim is for "violation[s] of due process and equal protection clause." (Docket Entry No. 10, at 10). Shahrashoob's complaint and her responses to the motion to dismiss contain no further mention of a due process claim. Indeed, her response states only that her "14th amendment equal protection claims against the named individuals in their individual and official capacities should be maintained." (Docket Entry No. 16, at 6). Shahrashoob's § 1983 due process claim is dismissed, without prejudice and with leave to amend to assert allegations supporting a due process claim, if she intends to assert such a claim.

That leaves Shahrashoob's equal protection claim. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [s]he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

There are eleven remaining individual defendants. Those defendants and their alleged conduct are:

1. **Dr. Arul Jayaraman, the head of the Chemical Engineering Department.** Shahrashoob alleges that Dr. Jayaraman "refused to complete all of the necessary steps to facilitate [her] work visa application"; "gave [her] more courses to teach and new research obligations to fulfill"; "confessed to [her], after she repeatedly addressed concerns over the Defendants' lack of action taken in regards to securing her work visa, . . . that 'She was not a priority,'"; "initially evaluat[ed] her poorly on the employee annual evaluation in May 2019" after she filed her EEOC complaint; "mandated that she teach classes in the summer"; and told her "that before accepting the new offer, she should get permission to do so from her husband."

15

2. **Dr. N.K. Anand, position not stated.** Shahrashoob alleges that Dr. Anand "initially evaluat[ed] her poorly on the employee annual evaluation" after she filed her EEOC complaint.

3. **Damon Slaydon, position not stated.** Shahrashoob alleges that "[i]n the spring of 2020, [she] informed Damon Slaydon of her complaints" that "[she] still had not received an office . . . nor had received her work visa, nor ha[d] she received the increase in salary she was promised in the previous offer letter. Slaydon said he would address these concerns, but never did."

4. **Jennifer Smith, position not stated.** Shahrashoob states that "she was the Title IX director. She took no action to investigate [her] Title IX discrimination claims while [she] was still employed with Defendants."

5. **Dr. Blanca Lupiani, position not stated.** Shahrashoob alleges that "Blanca Lupiani denied all requests for reasonable accommodations made by Plaintiff." She does not allege what those reasonable accommodation requests were, or why they were made.

6. **Dr. Micah Green, position not stated.** Shahrashoob alleges that "Micah Green refused to invite [her] to faculty meetings and include her on faculty correspondence" . . . "after [she] had made complaints of discrimination," and alleges that "[a]fter [she] was terminated, Green contacted her PhD advisor at the University of Oklahoma and defamed her to that advisor, compelling that advisor to refrain from writing employment recommendations for [her], even though he had written employment recommendations for [her] in the past."

7. **Dr. Victor Ugaz, position not stated.** Shahrashoob alleges that "Victor Ugaz . . . refused to assign any online classes to [her], after she made a request for reasonable accommodation, in retaliation for her complaints of discrimination."

8. **Dr. Jodie Luthkenhaus, a "faculty member [with] the same credentials and responsibilities as [Shahrashoob].** Shahrashoob alleges that "Luthkenhouse retaliated against [her] by not inviting [her] to staff meetings of faculty in the Chemical Engineering Department . . . after [she] made complaints of discrimination."

9. **Dr. Anastasia Muliana, position not stated.** Shahrashoob alleges that Muliana, "in her professional capacity, failed to report Plaintiff's Title 9 complaint." Shahrashoob does not include any allegations about when she allegedly made a Title IX complaint.

10. **Jaime Andres, "an administrator."** Shahrashoob alleges that Andres "responded to [her] complaints about the terms of her new offer letter that were refused in reality and her other employment complaints, by stating to her that her culture . . . impeded her ability to understand and appreciate the excuses and treatment directed towards [her]," and that he "ridiculed [her] by explaining to her that she needed mental health counseling, deriding her for making complaints."

11. **Kevin McGinnis, "compliance officer."** Shahrashoob alleges that "McGinnis . . . did not comply with the university regulations and discriminated against [her] by cooperating

16

with the department actively or through omission by segregating the plaintiff [and] not inviting her to the faculty meetings."

Shahrashoob's claims against Slaydon, Smith, Lupiani, and Muliana, are dismissed, without prejudice and with leave to amend. Shahrashoob alleges that Muliana and Smith did not investigate her Title IX claims, but she does not include any allegations about the timing or nature of her Title IX complaint, and does not allege that they failed to investigate because of either retaliation or discrimination. Shahrashoob similarly alleges that Slaydon made promises to investigate her complaints about her employment terms, but then did not follow up. Shahrashoob has not alleged that Slaydon did so with discriminatory or retaliatory animus. And Shahrashoob alleges that Lupiani denied her reasonable accommodations, but she does not allege what those accommodations were for, when the accommodation requests were made, or why Lupiani allegedly denied them.

Shahrashoob's claims against Anand, Green, Ugaz, and McGinnis, do not sound in equal protection. Instead, Shahrashoob alleges that these individuals retaliated against her after she complained of discrimination. "[R]etaliation claims growing out of complaints of employment discrimination have not been recognized under the Equal Protection Clause of the Fourteenth Amendment." *Matthews v. City of West Point*, 863 F. Supp. 2d 572, 604 (N.D. Miss. 2012). Shahrashoob's § 1983 claims against these defendants are also dismissed, without prejudice and with leave to amend.

Finally, Shahrashoob's § 1983 claims against the remaining defendants, Jayaraman and Andres, are dismissed, without prejudice and with leave to amend, because Shahrashoob has not clearly alleged that she was treated different than other similarly situated individuals, for reasons already explained in this opinion.

### E. 42 U.S.C. § 1981

Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To state a § 1981 discrimination claim, a plaintiff must allege facts showing that he or she was the subject of intentional discrimination. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Shahrashoob has not alleged direct or circumstantial evidence that the individual defendants intentionally discriminated against her because she was Iranian.

For direct evidence, Shahrashoob alleges that at least two employees made comments that could be related—or at least Shahrashoob interpreted them as related—to her national origin. Shahrashoob alleges that Dr. Jayaraman told her that she should ask her husband before accepting a job offer, and alleges that Andres stated "her culture" prevented her from understanding her treatment by her colleagues. "For comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the termination[]; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (internal quotations, citations, and alterations omitted). Shahrashoob has not alleged when these comments were made in comparison to her termination, and she has not alleged whether Jayaraman or Andres had any authority over decisions related to her term of tenure or her firing.

For circumstantial evidence of discrimination, Shahrashoob must allege that "(1) [she] is a member of a protected class; (2) [she] was qualified for [her] position . . . ; (3) [she] experienced an adverse employment action; and (4) [s]he was replaced by someone outside of the protected class or treated less favorably than similarly situated colleagues." *Obudela v. Exxon Mobil Corp.*, 736 F. App'x 437, 443–44 (5th Cir. 2018). Shahrashoob has not alleged that she was replaced by someone outside her protected class, and for reasons already discussed, Shahrashoob has not sufficiently alleged that there were similarly situated employees who received more favorable treatment.

Shahrashoob's § 1981 claims against the Individual Defendants, are dismissed without prejudice and with leave to amend.

**IV.  Conclusion**

The Defendants' motion to dismiss, Docket Entry No. 15, is granted. Shahrashoob voluntarily dismissed, without prejudice, her claims against Katherine Banks, John Sharp, Gary Blizzard, and the Texas A&M Board of Regents. Shahrashoob's Title VI and Title VII claims against the Individual Defendants; her 42 U.S.C. §§ 1983 and 1981 claims against Texas A&M University System, Texas A&M at College Station, and the Individual Defendants in their official capacities; and her ADA and Title IX claims against all Defendants, are dismissed, with prejudice and without leave to amend because amendment would be futile. Shahrashoob's Title VII and Title VI claims against the University and University System; and 42 U.S.C. §§ 1983 and 1981 claims against the Individual Defendants in their personal capacities, are dismissed, without prejudice and with leave to amend. Shahrashoob's second amended complaint is due by **September 22, 2022.** Failure to file by this deadline may result in dismissal with prejudice. The

initial conference is reset to **November 18, 2022, at 11:30 A.M.**, by Zoom, to allow time for the Defendants to answer or move to dismiss Shahrashoob's second amended complaint.

SIGNED on August 26, 2022, at Houston, Texas

_____
Lee H. Rosenthal
Chief United States District Judge