United States District Court
Southern District of Texas
**ENTERED**
November 28, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ZAHRA SHAHRASHOOB, | § § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. H-22-699 |
| TEXAS A&M UNIVERSITY, et al., | § § § | |
| Defendants. | § § § § | |

**MEMORANDUM AND OPINION**

Dr. Zahra Shahrashoob was employed for two years with Texas A&M University at College Station ("Texas A&M"), first as a lecturer and then as non-tenure track professor. After two years, Texas A&M decided not to renew Dr. Shahrashoob's employment contract. Dr. Shahrashoob alleges that Texas A&M discriminated against her because of her sex and national origin and retaliated against her for engaging in Title VII-protected activity. The defendants—Texas A&M, the Texas A&M University System, the chancellor and president of Texas A&M, the Texas A&M Board of Regents, and several Texas A&M employees—moved to dismiss and for summary judgment. In response, Dr. Shahrashoob has voluntarily dismissed all claims except her Title VII claims against Texas A&M. Based on the motion, the response, the record, and the applicable law, the court grants the motion for summary judgment as to the remaining claims and defendant. The motion to dismiss is denied as moot, and final judgment is entered by separate order. The reasons are set out below.

**I.      Background**

Dr. Shahrashoob describes herself as "a Canadian permanent resident" who is "originally from Iran." (Docket Entry No. 43-5 at ¶ 1). In September 2018, Dr. Shahrashoob was hired for a nine-month term as a "Lecturer" in Texas A&M's department of chemical engineering. (*Id.*; Docket Entry No. 42-1 at 16). Dr. Shahrashoob's duties included "teaching various sections of CHEN 432 and CHEN 433 (Chemical Engineering Laboratories) class and performing other relevant tasks." (Docket Entry No. 42-1 at 16). When Dr. Shahrashoob was hired, the department head, Dr. M. Nazmul Karim, told her that Texas A&M would sponsor her petition to adjust her status from a non-immigrant alien to a legal permanent resident. (*Id.* at 16, 38).

In February 2019, Texas A&M offered Dr. Shahrashoob the position of "Instructional Assistant Professor" for an additional nine-month term. (*Id.* at 18). Texas A&M classified the position change as a "lateral transfer" intended to help Dr. Shahrashoob obtain permanent residency status. (*Id.* at 62). Dr. Shahrashoob's duties as an Instructional Assistant Professor included "teaching three (3-credit) courses per semester in chemical engineering." (*Id.* at 18).

In March 2019, Dr. Arul Jayaraman became the acting head of the department of chemical engineering. (*Id.* at 7). In January 2020, Dr. Shahrashoob received an offer letter from Texas A&M for a third nine-month term. (*Id.* at 20). The offer included a salary increase, from $7,000 per month to $8,195 per month. (*Id.*). The salary increase was another measure to assist Dr. Shahrashoob's application for permanent residency. (*Id.* at 62). After Dr. Shahrashoob signed the offer letter, the department learned that the salary offered was less than the amount required by the Department of Labor for permanent-resident status. (*Id.* at 39).

On February 24, 2020, Dr. Shahrashoob met with Dr. Jayaraman and Jaime Andres, the department's senior administrative coordinator, to discuss a second potential salary increase. (*Id.*).

Dr. Jayaraman told Dr. Shahrashoob that she "would receive an updated offer letter in a few days with adjusted wages and responsibilities." (Docket Entry No. 43-1 at 2). Dr. Jayaraman also told Dr. Shahrashoob that she "should talk to [her] husband to ensure [her] husband agreed with" the terms of the offer letter. (*Id.*). Dr. Shahrashoob raised concerns about her office and workload. (*Id.*). She complained that she had been assigned a cubicle instead of an enclosed office and that other professors' students had been disturbing her by asking questions of their professors when she was trying to work. (*Id.*). Dr. Jayaraman asked Dr. Shahrashoob to identify the professors whose students were disturbing her. (*Id.*). When Dr. Shahrashoob refused to identify the professors, either Dr. Jayaraman or Mr. Andres told her that her "Iranian culture was interfering with [her] work responsibility to report professors." (*Id.*). Dr. Shahrashoob also complained that although her position was "only supposed to teach a maximum of six credit hours per semester," her course load "was nine credits for Spring 2019 semester and eight credits for Fall 2019 semester." (*Id.*). Dr. Jayaraman agreed to reduce Dr. Shahrashoob's workload to six credit hours per semester. (*Id.*).

On March 4, 2020, and March 22, 2020,[1] Dr. Shahrashoob filed complaints with Texas A&M's office for Title IX compliance, alleging that Dr. Jayaraman had discriminated against her based on her sex and national origin. (Docket Entry No. 43-5 at ¶ 3). On May 8, 2020, Dr. Jayaraman informed Dr. Shahrashoob by letter that "we will not be able to adjust your pay for a second time to meet the PERM prevailing wage requirements for a Nonagricultural Immigration Program application ($98,340 annual salary). This decision is based on budgetary constraints.

---

[1] The parties appear to disagree on when Dr. Shahrashoob filed her complaints with the Title IX office. The defendants state that she did so in April 2020, (Docket Entry No. 42 at 26), while Dr. Shahrashoob states in her declaration that it was March 2020, (Docket Entry No. 43-5 at ¶ 3). The complaints themselves are not in the record. This dispute is immaterial, but because of the procedural posture, the court assumes Dr. Shahrashoob's dates are accurate.

Your previous offer letter dated January 23, 2020 (signed January 24, 2020) will still be valid." (Docket Entry No. 42-1 at 22).

On June 13, 2020, Dr. Shahrashoob filed a charge of discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission. (*Id.* at 24). Dr. Shahrashoob alleged that Dr. Jayaraman discriminated against her on the basis of sex and national origin and retaliated against her for filing complaints with the Title IX office. (*Id.*). Dr. Shahrashoob's charge was based on her office situation, pay, and courseload. (*Id.*).

On August 14, 2020, the department sent Dr. Shahrashoob a letter informing her that her employment term for the 2020-2021 academic year would be 4.5 months, from September 1, 2020, to January 15, 2021. (*Id.* at 25). On September 22, 2020, Dr. Shahrashoob filed a second discrimination charge with the Texas Workforce Commission and the Equal Employment Opportunity Commission. (*Id.* at 31). She alleged that Dr. Jayaraman discriminated against her based on her disability—asthma—by refusing to review her requests for accommodations. (*Id.*). She also alleged that her employment term was decreased to 4.5 months as retaliation for her protected activity. (*Id.*). The Equal Employment Opportunity Commission issued Dr. Shahrashoob "right to sue" letters in December 2020. (*Id.* at 34–35).

On January 14, 2021, Dr. Jayaraman sent Dr. Shahrashoob a letter "affirm[ing] the end of [her] 4.5 month appointment" effective January 15, 2021. (*Id.* at 26). In March 2022, Dr. Shahrashoob filed this action against the Texas A&M University System, Texas A&M, the chancellor and president of Texas A&M, the Texas A&M Board of Regents, and several employees. (Docket Entry No. 1). In her original and first amended complaints, Dr. Shahrashoob alleged violations of Titles VI and VII of the Civil Rights Act of 1964, §§ 601 and 701 *et seq.*, 42 U.S.C. §§ 2000d and 2000e *et seq.*; Title IX of the Education Amendments of 1972, § 901 *et seq.*

20 U.S.C. § 1681 *et seq.*; the Americans with Disabilities Act of 1990, § 2 *et seq.*, 42 U.S.C. § 12101 *et seq.*; and 42 U.S.C. §§ 1981 and 1983. (Docket Entry Nos. 1, 10).

The defendants moved to dismiss Dr. Shahrashoob's first amended complaint under Rule 12(b)(6). (Docket Entry No. 15). The court granted the motion in part, dismissing Dr. Shahrashoob's claims under Title IX and the Americans with Disabilities Act with prejudice. (Docket Entry No. 20 at 2). The court also dismissed with prejudice Dr. Shahrashoob's Title VI and Title VII claims against the individual defendants, and her §§ 1981 and 1983 claims against Texas A&M University System, Texas A&M, and the individual defendants in their official capacities. (*Id.*). The court dismissed Dr. Shahrashoob's other claims without prejudice and with leave to amend. (*Id.* at 2–3).

Dr. Shahrashoob filed a second amended complaint, (Docket Entry No. 21), and the defendants have again moved to dismiss, (Docket Entry No. 31). The defendants have also moved for summary judgment. (Docket Entry No. 42). In response, Dr. Shahrashoob has voluntarily dismissed her claims against all defendants except Texas A&M. (Docket Entry No. 43 at 2). Dr. Shahrashoob's remaining claims are that Texas A&M violated Title VII by discriminating against her based on her national origin and sex and retaliating against her for her protected activity. (*Id.*).

## II. The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021)

5

(quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### III. Analysis

#### A. The Title VII Retaliation Claim

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

When a plaintiff relies on circumstantial evidence to prove retaliation, the *McDonnell Douglas*[2] framework applies. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty*, 79 F.4th 494 (5th Cir. 2023) (en banc). Under the first step of *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of retaliation: "(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting reference and quotation marks omitted). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's reason is actually a pretext for retaliation. *Id.* "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id.* (quoting reference omitted). "This burden is satisfied by introducing evidence which, if true, would permit the trier-

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

7

of-fact to conclude that the termination was nondiscriminatory." *Id.* at 306 (quoting reference omitted).

The "causal causation" required for a *prima facie* case is less stringent than the "but-for" causation required to show pretext at the final step of *McDonnell Douglas*. To establish a "causal connection," the plaintiff "must demonstrate that the employer's decision was based in part on knowledge of the employee's protected activity." *Id.* at 305 (quoting reference omitted). Temporal proximity between the protected activity and the adverse employment action may be sufficient, standing alone, to establish a "causal connection." *Id.* However, the temporal proximity must be "very close." *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)). The Fifth Circuit has held that "a six-and-a-half-week timeframe is sufficiently close, but that a five-month lapse is not close enough, without other evidence of retaliation, to establish the 'causal connection' element of a prima facie case of retaliation." *Id.*

While temporal proximity alone can establish the "causal connection" element of a *prima facie* case, "it is insufficient to demonstrate pretext." *Id.* at 306–07; *see also Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). To show pretext, a plaintiff "must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "The plaintiff must rebut each nondiscriminatory reason articulated by the employer." *Id.* "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quotation marks and quoting reference omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id.*

Dr. Shahrashoob relies on circumstantial evidence to prove retaliation, so the *McDonnell Douglas* framework applies. Texas A&M does not contest that Dr. Shahrashoob engaged in protected activity. (Docket Entry No. 42 at 26). Dr. Shahrashoob filed an administrative complaint of discrimination with Texas A&M's office for Title IX compliance in March 2020. (*Id.*; *see also* Docket Entry No. 43-5 at ¶ 3). She also filed discrimination charges with the Texas Workforce Commission and Equal Employment Opportunity Commissions in June 2020 and September 2020. (Docket Entry No. 42 at 26).

However, Dr. Shahrashoob, in her response, relies on none of these to satisfy the first element of her *prima facie* case. Instead, she relies on an email thread exchanged during late July and early August 2020. (Docket Entry No. 43 at 4). In the email thread, Dr. Shahrashoob asks Victor Ugaz, the department professor responsible for course assignments, (Docket Entry No. 42-1 at 42), several questions about her treatment by the department, including:

> 2. Why does the department not treat me the same as the similarly titled faculties? I am the only faculty with a Ph.D. degree assigned to teach lab courses only and not core courses before (except Spring 2020) and for Fall 2020 although I have requested several times. . . . .
>
> 3. You talked about the department's needs in your previous emails. In Fall 2018 I taught 4 sections of CHEN 432 while I was newly hired. In Spring 2019 I taught higher load than the rest of the similarly titled faculties in the department by assigning 4 sections of CHEN 433 and one section of the seminar to me. Against the state law (According to Dr. Jayaraman's March 9th, 2020 email) I was overloaded in Fall 2019 with 4 sections of CHEN 432. Why am I the only solution to the department's needs by overloading me and assigning the worst lab hours to me?
>
> . . .
>
> 5. I believe I have faced unequal conditions and terms in the department by assigning me the highest teaching loads, worst lab times, no office, and minimum salary in the department compared to similarly titled faculties for the past semesters.
>
> . . .

9

> 8. The only difference I see between myself and the other faculties in the department is that I am an Iranian woman. Is this the reason that department leadership is treating me differently than others? Or is it because I have exercised my protected rights filing a discrimination complaint with the Texas Workforce Commission?

(Docket Entry No. 43-3 at 3–4).

Dr. Shahrashoob forwarded this email to Ryan Jackson, a compliance investigator with Texas A&M's Department of Civil Rights and Equity Investigations. Mr. Jackson responded to Dr. Shahrashoob alone:

> I hope this finds you well. I am checking in because the below email was forwarded to us. In the email, you seem to be alleging that Dr. Ugaz has either discriminated against you or has retaliated against you for filing a complaint with the Texas Workforce Commission and our office. Are you interested in making any charge against Dr. Ugaz?

(*Id.* at 2). There is no follow-up email from Dr. Shahrashoob in the record.

Texas A&M argues that this email thread is not protected activity on which Dr. Shahrashoob's retaliation claim can be based because "th[e] email exchange is not a complaint about discrimination, but is merely an inquiry from Ryan Jackson asking Dr. Shahrashoob if she wants to make a complaint of discrimination against Dr. Ugaz." (Docket Entry No. 44 at 5). Texas A&M also argues that "the evidence clearly shows that Dr. Jayaraman was not copied on the email from Ryan Jackson, which is the only email in that email chain that even *mentions* discrimination or making a discrimination complaint." (*Id.*).

"Protected activity" under § 2000e–3 includes "oppos[ing] any practice made an unlawful employment practice by this subchapter" and "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." "An informal complaint may constitute protected activity for purposes of retaliation claims." *Amanduron v. Am. Airlines*, 416 Fed. App'x. 421, 424 (5th Cir. 2011) (unpublished) (quoting *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009)) (alteration adopted). For example,

10

"the complaints of female employees to a co-owner of the employer and to a foreman 'about the unequal pay' despite the absence of a formal EEOC complaint" constitute an informal complaint. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008) (citing *E.E.O.C. v. White & Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989)).  Dr. Shahrashoob asked whether the department was "treating [her] differently than others" because she is "an Iranian woman" who "exercised [her] protected rights filing a discrimination complaint with the Texas Workforce Commission[.]" (Docket Entry No. 43-3 at 4).  Dr. Jayaraman was copied on that email to Dr. Ugaz, and the email was protected activity under § 2000e–3.  The first element of Dr. Shahrashoob's *prima facie* case is satisfied.

Texas A&M does not dispute that Dr. Shahrashoob has met the second element of her *prima facie* case: "[Texas A&M] [] acknowledges that Dr. Shahrashoob's contract non-renewal constitutes an adverse employment action for purposes of a Title VII retaliation claim." (Docket Entry No. 42 at 26).  Texas A&M argues that Dr. Shahrashoob has not satisfied the third element because "there is simply no evidence of any causal connection between the non-renewal of Dr. Shahrashoob's academic appointment and her discrimination complaints." (*Id.*).  Texas A&M first argues that "[t]here is no evidence that Dr. Jayaraman, or anyone else involved in the decision to end Dr. Shahrashoob's academic appointment, even knew that she had filed discrimination complaints before they made their decision." (*Id.* at 26–27).  The email thread discussed above refutes Texas A&M's argument.  If Dr. Jayaraman did not know of Dr. Shahrashoob's discrimination complaints through other channels, he knew at least by August 2020, when Dr. Shahrashoob mentioned her complaints in an email on which Dr. Jayaraman was copied.  The email thread is itself protected activity of which Dr. Jayaraman was aware.

11

Texas A&M next argues that even if Dr. Jayaraman knew of Dr. Shahrashoob's protected activity, there is no evidence that the protected activity "played any role in the[] decision to end Dr. Shahrashoob's academic appointment." (Docket Entry No. 42 at 27). Texas A&M argues that "the record evidence shows that the decisions to shorten and not renew Shahrashoob's academic appointment were not solely made by Dr. Jayaraman." (Docket Entry No. 44 at 5). According to Texas A&M, Dr. Jayaraman "along with others reached those employment decisions and [Dr.] Shahrashoob has not pointed to any evidence that anyone else involved in the decisions regarding her academic appointments was copied on or even aware of Ryan Jackson's email to [Dr.] Shahrashoob or any other alleged protected activity." (*Id.* at 5–6).

Texas A&M's arguments as to a lack of causal connection are unpersuasive. Dr. Shahrashoob's burden at this point is to identify evidence raising a factual dispute as to whether "the employer's decision was based in part on knowledge of the employee's protected activity." *Lyons*, 964 F.3d at 306 (quotation marks and quoting reference omitted). Dr. Jayaraman testified in his deposition that although the decision to reappoint Dr. Shahrashoob for a 4.5-month term was not "exclusively" his, he "provided input." (Docket Entry No. 42-1 at 13). This evidence, coupled with the close temporal proximity between Dr. Shahrashoob's protected activity and the reduction in her employment term, satisfies Dr. Shahrashoob's burden. Dr. Shahrashoob received notice of her reduced appointment roughly a week after the emails in which she asked whether the department had been discriminating and retaliating against her, and two months after her first discrimination charge with the Texas Workforce Commission and Equal Employment Opportunity Commission. Texas A&M's arguments that Dr. Shahrashoob has not produced evidence of a causal connection appear to be based on the but-for causation standard that applies at the final step of *McDonnell Douglas*. *See Strong*, 482 F.3d at 808.

Dr. Shahrashoob has made a *prima facie* showing of retaliation, shifting the burden to Texas A&M to proffer a legitimate non-retaliatory reason for reducing her employment term. According to Texas A&M, Dr. Shahrashoob's employment term was reduced because of "budget constraints and department needs." (Docket Entry No. 42 at 27). This is a legitimate non-retaliatory reason with support in the record. (*See* Docket Entry No. 42-1 at 11).

Dr. Shahrashoob argues that Texas A&M's proffered reason is pretextual because "at least two new faculty members were hired around the same time Dr. Shahrashoob's appointment ended." (Docket Entry No. 43 at 5). According to Dr. Shahrashoob, "hiring two new faculty around the time it released Dr. Shahrashoob from her employment does not comport with budgetary constraints being present for [Texas A&M]." (*Id.*).

The court finds that Dr. Shahrashoob has not carried her burden of showing a factual dispute material to determining whether her protected activity, rather than Texas A&M's budgetary constraints and staffing needs, was the but-for cause of her reduced employment term. Dr. Jayaraman, in his deposition, offered two distinct reasons for Dr. Shahrashoob's reduced employment term: "budgetary considerations" and the "teaching needs of the department." (Docket Entry No. 42-1 at 11–12). The evidence highlighted by Dr. Shahrashoob—that the department hired two new faculty members around the time she was terminated—does not undermine Texas A&M's explanation without additional evidence that at least one of the two new faculty members was hired to teach the same classes that Dr. Shahrashoob had taught. Dr. Shahrashoob has not identified evidence that the two new professors—who, unlike Dr. Shahrashoob, were hired to fill tenure-track positions—served the same "teaching needs" that she had served. (Docket Entry No. 42-1 at 13).

The other evidence on which Dr. Shahrashoob relies to show pretext is also insufficient. Dr. Shahrashoob relies on temporal proximity, Dr. Jayaraman's knowledge of her protected activity, and the fact that Dr. Jayaraman gave "input" on the decision to shorten her employment term. (Docket Entry No. 43 at 4–5). While this evidence is sufficient for a *prima facie* case, it does not satisfy the higher burden of raising a factual dispute as to pretext. *See Lyons*, 964 F.3d at 306–07 ("Lyons failed to offer anything more to substantiate her claim of retaliation than the facts of her protected action on August 5, 2014, and her removal from coaching basketball one week later. This 'very close' temporal proximity is sufficient to establish the 'causal connection' element of her prima facie case, but it is insufficient to demonstrate pretext."). The record is silent as to what "input" Dr. Jayaraman provided, and there is no evidence that Dr. Shahrashoob's protected activity factored into the decision to reduce her employment term.

Summary judgment is appropriate on Dr. Shahrashoob's Title VII retaliation claim.

### B.     The Title VII Discrimination Claim

A *prima facie* case of discrimination under Title VII requires the plaintiff to show that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556. As with a Title VII retaliation claim, the *McDonnell-Douglas* framework applies when a plaintiff relies on circumstantial evidence to establish discrimination. *Id.*

The only disputed element of Dr. Shahrashoob's *prima facie* case is whether she was treated less favorably than similarly situated employees outside her protected group. The dispute centers around a professor in the chemical engineering department named Dr. James Holste. Dr.

Jayaraman testified in his deposition that apart from Dr. Shahrashoob, Dr. Holste was the only faculty member in the department to have his employment term reduced to 4.5 months. (Docket Entry No. 42-1 at 11–12). Dr. Shahrashoob argues that Dr. Holste was similarly situated to her and that he was treated more favorably because, although his employment term was reduced, he was not terminated, or if he was, he "was rehired or allowed to come back." (Docket Entry No. 43 at 6). Dr. Shahrashoob relies on a screenshot she took of Texas A&M's website in October 2023, showing that Dr. Holste "is Professor of Chemical Engineering at Texas A&M University in College Station, Texas."[3] (*Id.* at 6; Docket Entry No. 43-5 at 10–11; Docket Entry No. 43-9).

"Employees are similarly situated when they (1) held the same job or responsibilities, (2) shared the same supervisor or had their employment status determined by the same person, and (3) have essentially comparable violation histories." *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (quotation marks and quoting reference omitted). The Fifth Circuit has "defined 'similarly situated' narrowly, requiring the employees' situations to be 'nearly identical.'" *Id.* (quoting reference omitted).

Dr. Shahrashoob has failed to produce evidence raising a factual dispute material to determining whether she and Dr. Holste were similarly situated. The screenshot of Dr. Holste's faculty page shows that he had been on the chemical engineering faculty for decades and was a "Professor of Chemical Engineering," not an Instructional Assistant Professor like Dr. Shahrashoob. (Docket Entry No. 43-9). To the extent Dr. Shahrashoob relies on other faculty members in the department of chemical engineering as comparators, she has failed to make the necessary showing as to whether they were similarly situated to her.

---

[3] Texas A&M moves to strike the screenshot on grounds of relevance, hearsay, and authentication. (Docket Entry No. 44 at 8). The court does not address Texas A&M's objections because it finds that there is no evidence that Dr. Holste was similarly situated to Dr. Shahrashoob.

## IV.     Conclusion

The motion for summary judgment is granted. (Docket Entry No. 42). The motion to dismiss is denied as moot. (Docket Entry No. 31). Final judgment will be entered separately.

SIGNED on November 28, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge